IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| EMBRY JAY LOFTIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-17-315-RAW-SPS |
| MITSI FAUBION, et. al., | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This action is before the court on Defendants' motion for summary judgment. The court has before it for consideration Plaintiff's complaint [Doc. 1], Defendants' motion [Doc. 25], Plaintiff's response to the motion [Doc. 31], and a special report [Doc. 24] prepared by the Oklahoma Department of Corrections ("DOC") at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

Plaintiff, a *pro se* prisoner in the custody of the DOC, is currently incarcerated at Oklahoma State Reformatory Work Center in Granite, Oklahoma. Plaintiff brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at Mack Alford Correctional Center ("MACC") in Stringtown, Oklahoma. Plaintiff was housed at MACC from February 13, 2014, until his transfer to the Oklahoma State Reformatory on August 1, 2017. [Doc. 24-7 at 2]. Defendants are Dr. Mitsi Faubion; Correctional Health Services Administrator Heather Knight; and Nurse Brittany Campbell. Defendants were employed at MACC at the time when Plaintiff's claims allegedly arose.

Plaintiff alleges that Defendants Faubion, Knight and Campbell were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff claims that, prior to incarceration, he sustained a left foot injury from a chainsaw accident in 2001, and that he later suffered from an accidental gunshot injury to his left ankle in 2008. [Doc. 1 at 2]. Plaintiff claims he healed from both injuries. *Id*. After arriving at MACC, Plaintiff began experiencing severe pain in his ankle, and in and around his big left toe, when he walked the track. *Id*. Plaintiff claims he made requests

to see a specialist, and alleges the pain continued to worsen while at MACC. *Id*. Plaintiff states it took almost two years of complaining in order to get medical assistance. *Id*. Plaintiff now claims he was "subjected to crule [sic] and unusual punishment, deliberate indifference to his serious medical needs in violation of the Eighth Amendment of the United States Constitution; resulting from an inordinate delay of medical treatment of his pre-existing foot injury." *Id*. at 3. Plaintiff sets forth two grounds for relief within his complaint.

In Count One, Plaintiff claims Defendant Faubion "did act in her individual capacity, and contrary to state law and ODOC Policy Statements, with willful and wanton deliberate indifference and inexcusable disregard for Plaintiff's well-fare [sic] with the intent to either directly or indirectly deny Plaintiff's request to be seen by a [sic] outside specialist in order to obtain special shoes suitable for his foot condition, by communicating to him that ODOC no longer provides special shoes for offenders despite their foot condition." *Id*. at 4.

In Count Two, Plaintiff contends that Defendants Faubion, Knight and Campbell "have all acted in either their individual and/or official capacity by colluding . . . contrary to state statute and/or ODOC Policy, to deny or delay Plaintiff's outside medical treatment by either misleading him to believe that medical referral had been issued to see an outside provider and/or that they had submitted medical documents inorder [sic] to mislead him, or deliberately attempted to defame Plaintiff's claim of suffering from severe pain stemming from his foot condition . . . and to deliberately obstruct the administrative grievance process." *Id*. at 9.

Plaintiff asserts that he has exhausted his administrative remedies. *Id*. at 18. In support of his claims, Plaintiff attaches certain medical records, Request for Health Services documentation, and Request to Staff documentation. [Doc. 1-1].

**Standard of Review**

The defendants have filed a motion for summary judgment. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Because Plaintiff is a *pro se* litigant, the court construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). This relaxed standard, however, does not relieve his burden of alleging sufficient facts on which a recognized legal claim could be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**Exhaustion of Administrative Remedies**

Defendants allege, among other things, that Plaintiff has failed to exhaust the administrative remedies for the claims set forth in the complaint. [Doc. 25 at 19]. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). Substantial compliance is not sufficient. *Id.*

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Futility is not an exception to the

exhaustion requirement. *Jernigan*, 304 F.3d at 1032. Failure to exhaust is excused only if prison officials impede the prisoner's attempts. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010).

The procedure for exhausting administrative remedies in this case is set forth in DOC Policy OP-090124 (eff. Oct. 18, 2017) ("Inmate/Offender Grievance Process"). [Doc. 24-3]. The Inmate/Offender Grievance Process has several steps that must be satisfied before filing suit.

The first step of the grievance process requires an inmate to attempt informal resolution of his or her complaint by speaking to an appropriate staff member within three days of the relevant incident. If the inmate is dissatisfied after this initial attempt, a Request to Staff ("RTS") must be submitted. Section VIII(A) explains that this first informal level may be bypassed only if the complaint involves an emergency or sensitive grievance.

Next, if the complaint is not resolved informally, the inmate may obtain and complete an "Inmate/Offender Grievance Form" (DOC 090124A) and submit the grievance form, along with the RTS used in the informal resolution process with the response, to the reviewing authority. If the complaint is medically-related, the inmate must submit the grievance to the facility Correctional Health Services Administrator ("CHSA"). Grievances that are an emergency or of a sensitive nature can be submitted directly to the reviewing authority without informal resolution. This is appropriate where the inmate faces a substantial risk of personal injury, sexual harm or other irreparable harm.

Lastly, if the grievance does not resolve the issue, the inmate may appeal to the Administrative Review Authority ("ARA"), or if the complaint is medically-related, to the Medical Administrative Review Authority ("Medical ARA"), within 15 calendar days of receipt of the reviewing authority's decision or any amended decisions. The ruling of the ARA is final and concludes the administrative remedy procedures available through DOC. *See* Section VII(D). The administrative process is exhausted only after all of these steps have been taken.

**September 29, 2016 Request to Staff**

On September 29, 2016, Plaintiff submitted an RTS to Defendant Faubion. [Doc. 1 at 13]. Plaintiff requested a referral to a specialist and a CT scan or an MRI scan "in order to determine the true condition of the bone and soft tissue in between and around the area of my left toe, foot

and ankle." [Doc. 1-1 at 32]. In response, Plaintiff was advised "to submit a sick call slip for an appointment to be reevaluated on this issue." *Id*.

Plaintiff claims he thereafter submitted a grievance to Defendant Knight on October 25, 2016, setting forth complaints about Defendant Faubion for delaying all previous requests to see a specialist. [Doc. 1 at 15]. Plaintiff states the grievance "apparently disapeared [sic]." *Id*. Plaintiff submitted a grievance dated January 6, 2017 (Grievance 17-03), and another grievance dated January 10, 2017 (Grievance 17-04), complaining about the unanswered grievance dated October 25, 2016. [Doc. 24-4 at 8, Doc. 24-5 at 6]. A response was issued on January 12, 2017, explaining the prison had no record of the October 25, 2016, grievance, that the relief requested in Grievance 17-04 was denied because it asserted the same issue as Grievance 17-03, and that Defendant Knight "is currently working on a response" to Grievance 17-03. [Doc. 24-5 at 5].

**Grievance 17-03**

In Grievance 17-03, Plaintiff requested an appointment for a specialist to remove the bone spur on his foot. [Doc. 24-4 at 8]. Plaintiff also complained that he did not receive a response to grievance dated October 25, 2016. *Id*. On January 17, 2017, a grievance decision was issued. *Id*. at 7. The reviewing authority informed Plaintiff that his request for a specialist had already been granted. *Id*. Plaintiff was reminded that he had visited with the provider at MACC on October 25, 2016, and was seen by the specialist at Lindsay Municipal Hospital on November 29, 2016, "with orders to return to orthopedic provider in two months if symptoms not better." *Id*.

On January 23, 2017, Plaintiff appealed to the Medical ARA. [Doc. 24-4 at 5-6]. On February 27, 2017, the appeal was returned unanswered because the grievance was not submitted in accordance with policy. *Id*. at 2. An RTS had not been submitted with the grievance. *Id*. at 3. On March 17, 2017, Plaintiff once again attempted to appeal the grievance to the Medical ARA. [Doc. 24-5 at 3-4]. On April 20, 2017, Grievance 17-03 was again returned unanswered for failing to comply with the grievance process. *Id*. at 2. The court is not persuaded that Plaintiff's attempts to exhaust were impeded by prison officials, and he has made no further attempts to address his medical issues through the grievance process.

To properly exhaust administrative remedies, a final ruling from the ARA is mandatory. An inmate does not get to pick and choose the appropriateness of a particular procedure to his situation, or rely on his own contrary interpretations of the process, or adhere to a belief that he should not have to comply with available processes. *See Thomas v. Parker*, 609 F.3d 1114, 1119 (10th Cir. 2010). Plaintiff failed to fully and properly exhaust administrative remedies, and Plaintiff's deliberate indifference claims should be denied and dismissed. Moreover, for the reasons that follow, summary judgment must be granted in favor of Defendants even if the court were to assume Plaintiff had exhausted the administrative remedies.

**Medical Care**

Plaintiff alleges Defendants were deliberately indifferent to his medical needs. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court addressed the Eighth Amendment prohibition against cruel and unusual punishment in the context of medical attention:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

*Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (citations and footnotes omitted).

Deliberate indifference involves both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner first must produce objective evidence that the deprivation at issue was in fact "sufficiently serious." *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) (internal quotation marks omitted). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

The special report was filed on December 18, 2017. [Doc. 24]. Plaintiff's medical records ("Attachment 1" to the special report) were filed under seal. [Doc. 26]. The medical care related to Plaintiff's foot was summarized as follows:

> On February 21, 2014, in a medical request to staff, Loftis requested that he be restricted to the bottom bunk due to a pre-existing foot injury stemming from separate isolated accidents with a chain saw and a gun shot. (Attachment 1). Loftis was scheduled for a medical evaluation on February 25, 2014 where medical services ordered that he be restricted to the bottom bunk. (Attachment 1). Loftis did not complain about his foot again to medical until November 30, 2015 when he requested to be seen by medical services in order to determine whether he could be approved for a special shoe purchased from an outside vendor and supplied by his family that would help support his ankle and ball of his foot. (Attachment 1). On December 4, 2015, Loftis was scheduled for a medical appointment which took place on December 8, 2015. (Attachment 1). At that appointment, medical services began the process of determining whether there was a medical necessity for the special shoe which required x-rays and permission from the warden and health services administrator. (Attachments 1 and 2).
>
> On January 25, 2016 and February 8, 2016, Loftis' left foot was x-rayed which showed degenerative arthritis and spurring on the posterior calcaneus, but no fracture, destructive bony lesion or instability. (Attachment 1). After the x-ray, Dr. Faubion, on February 16, 2016, advised Loftis that to have the special shoes from an outside vendor approved, a picture of the same would have to be sent by his family to the Health Services Administrator. (Attachment 1). On May 13, 2016, the special shoes were received by MACC, but were designated as contraband pending medical and warden final approval. (Attachment 2). On June 17, 2017, the special shoes were prepared for issuance to Loftis and subsequently delivered.[1] (Attachment 2).
>
> Between June 16, 2016 and October 19, 2016, Loftis made approximately eight medical requests concerning his left foot and requested to be seen by a specialist on various occasions. (Attachment 1). On July 28, 2016, Loftis' request to see a specialist was denied. (Attachment 1). However, MACC medical services scheduled Loftis for in-house medical appointments and more x-rays within one or two days time of each request despite the fact that Loftis refused to attend at least one of those appointments. (Attachment 1). On October 25, 2016, Dr. Faubion authorized a referral for Loftis to see an orthopedic specialist with Lindsay Municipal Hospital which occurred on November 29, 2016. (Attachment 1). On January 24, 2017, Loftis was again seen at Lindsay Municipal Hospital by a specialist who recommended Loftis wear a wide/high toed shoe special ordered from Loveless Orthopedic Appliance and Custom Boots and Shoes. (Attachment

---

[1] The delivery of the shoes, according to the records in Attachment 2, actually occurred on June 17, 2016, rather than June 17, 2017, as referenced in the Special Report. [Doc. 24-2].

1). In accordance with the specialist's orders, MACC ordered the custom shoes from Loveless and provided the same to Loftis. (Attachment 1).

From January 24, 2017 through May 2, 2017, Loftis was observed on many occasions walking normally, without a limp or favoring one foot, and even seen using the stairs without any noticeable distress. (Attachment 1). Regardless, on May 2, 2017, Loftis again was taken to the Lindsay Municipal Hospital for a routine follow-up where he was seen by an orthopedic specialist. (Attachment 1). At that appointment, surgery was recommended, scheduled and completed on May 16, 2017. (Attachment 1). After the surgery, Loftis was evaluated medically by the specialist at Lindsay Municipal Hospital and medical services at MACC. (Attachment 1).

In summation, every time Loftis made a medical request, he was seen by a medical professional within one or two weeks time, sometimes sooner. (Attachment 1). He first requested to see a specialist in June 2016 and was subsequently referred to a specialist in October 2016 with surgery occurring in May 2017. (Attachment 1).

[Doc. 24 at 4-6].

Upon review of the record, the court finds the acts complained of do not show deliberate indifference to Plaintiff's medical needs as alleged. It is clear from the record that medical care was provided. Where there is such evidence of a "series of sick calls, examinations, diagnoses, and medication . . . it cannot be said there was a 'deliberate indifference' to the prisoner's complaints." *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976).

This case is analogous to *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In *Olson*, a state prisoner made several claims within his § 1983 complaint, including denial of adequate medical care. *Id*. at 1476. Plaintiff Olson requested a court order directing defendants to provide necessary medical treatment, as well as damages for pain and suffering. *Id*. The lower court dismissed the § 1983 complaint and Plaintiff Olson appealed to the Tenth Circuit Court of Appeals. *Id*. The Circuit affirmed the lower court's judgment and provided the following guidance:

> With regard to plaintiff's enlarged claim that he was made to suffer for eighteen months while the prison failed to provide him with a heart specialist and surgery, we again look solely to the medical records that plaintiff submits in support of his claim of deliberate indifference. Rather than support a claim of deliberate indifference, the attachments show appropriate medical treatments prior to hospitalization. In his discharge summary, the heart specialist specifically states, "The patient was admitted to the hospital because of recurrent chest pain treated with Nitroglycerine effectively." Discharge Summary, p. 1. "In order to state a cognizable claim, a prisoner must allege acts or omissions *sufficiently harmful* to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106,

> 97 S.Ct. at 292 (emphasis added). In *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the Court clarified and emphasized the Eighth Amendment's deliberate indifference standard under *Estelle.* "[O]nly the ' "unnecessary *and wanton* infliction of pain" ' implicates the Eighth Amendment." *Id.* 501 U.S. at ——, 111 S.Ct. at 2323 (emphasis in the original) (quotation omitted).
>
> During the entire period of the alleged delay, plaintiff received effective medication. At most, plaintiff differs with the medical judgment of the prison doctor, believing that he should have received his elective surgery sooner than he did. Such a difference of opinion does not support a claim of cruel and unusual punishment. *See Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir.1993).

*Olson* at 1477.

The court has thoroughly reviewed Plaintiff's pleadings and his attached medical documents. The court has also reviewed the special report and attachments. In short, the documentation provided by Plaintiff shows he was regularly receiving treatment for his foot problems. [Doc. 1-1]. The medical records further reflect that, on February 16, 2016, in a follow-up visit to his x-rays, Plaintiff was instructed "to have family email CHSA [B]ourland a picture of shoes and then warden and medical will either approve or decline." [Doc. 1-1 at 11]. MACC received the special shoes on May 13, 2016. [Doc. 24-2]. Because the shoes had not yet been approved, they were held pending review. The shoes were dispensed to Plaintiff on June 17, 2016. Approximately 35 days passed from the time the shoes were sent by Plaintiff's family until the time they were approved and dispensed to Plaintiff. Even so, the court is not convinced, under the circumstances, that the delay in providing the shoes to Plaintiff would rise to the level of negligence. Deliberate indifference requires more than a finding of negligence.

Nevertheless, both before <u>and</u> after receiving special shoes from his family in June, 2016, Plaintiff continued to receive medical treatment for his foot. Plaintiff met with a specialist in January, 2017, and MACC ordered other special shoes from Loveless Orthopedic Appliance and Custom Boots and Shoes. [Doc. 26-1 at 48]. Plaintiff also had surgery on May 16, 2017. At no time was Plaintiff denied medical treatment for his foot problems. Like *Olson*, Plaintiff received medication and treatment during the entire period of the alleged delay in medical care. Plaintiff

differs with the medical judgment of the prison doctor, but a difference of opinion does not support a claim of cruel and unusual punishment. Therefore, Plaintiff did not suffer a constitutional violation. The court finds there are no genuine issues of material fact, and summary judgment is warranted.

**ACCORDINGLY,** Defendants' motion for summary judgment [Doc. 25] is GRANTED, and this action is, in all respects, DISMISSED.

**IT IS SO ORDERED** this 27th day of March, 2019.

_Ronald A. White_
Ronald A. White
United States District Judge
Eastern District of Oklahoma